**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>United States of America</u>

                                                        Case No. 12-cr-111-PB-1

   v.                                                     Opinion No. 2020 DNH 186

<u>Delano Nelson</u>

**MEMORANDUM AND ORDER**

Defendant Delano Nelson moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)"), as amended by Section 603(b)(1) of the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239.  For the following reasons, I deny Nelson's motion.

## I.   STANDARD OF REVIEW

Following its amendment by the First Step Act, the compassionate release statute, codified as Section 3582(c)(1)(A), provides that

> the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in . . . [18 U.S.C. §] 3553(a) [("Section 3553(a)")] to the extent that they are applicable . . . .

§ 3582(c)(1)(A).  The court may reduce a defendant's prison sentence if it finds that "extraordinary and compelling reasons

warrant such a reduction," id. § 3582(c)(1)(A)(i), and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," id. § 3582(c)(1)(A).

The Sentencing Commission's policy statement ("the policy statement"), which was promulgated prior to the passage of the First Step Act, provides as follows:

> Upon motion of the Director of the [BOP] under [Section 3582(c)(1)(A)], the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in [Section 3553(a)], to the extent that they are applicable, the court determines that —
>
> (1)  (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

U.S. Sentencing Guidelines Manual ("USSG") § 1B1.13 (U.S. Sentencing Comm'n 2018).  The commentary to the policy statement further explains what is meant by "extraordinary and compelling reasons."  It states, in relevant part, that "[p]rovided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist," USSG § 1B1.13 cmt.

n.1, when "[t]he defendant is . . . suffering from a serious physical or medical condition," id. § 1B1.13 cmt. n.1(A)(ii)(I).

District courts are divided on whether the policy statement remains binding following the enactment of the First Step Act. Cf. United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019) (collecting cases).  I am not aware of any court that has chosen to disregard the policy statement entirely.  I conclude, instead, that it "provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive given the statutory change."  Id. at *3.

## II.  BACKGROUND

In 2013, Nelson pleaded guilty to two counts of interference with commerce by threats or violence, in violation of 18 U.S.C. § 1951(a).  See J. in a Crim. Case, Doc. No. 50 at 1.  According to the indictment, Nelson and several other individuals, including co-conspirator Walter Williams, forcibly robbed two jewelry stores in October and November of 2011.  See Presentence Report, Doc. No. 40 at 4-5.  Williams, one of the co-conspirators, brandished a gun during both robberies and injured a store clerk during the first robbery by striking him in the head with the butt of the gun.  See id.  Nelson did not brandish a gun or injure anyone, but he used a hammer to smash a display case during the second robbery.  See id.

3

Nelson's previous criminal activity was serious and extensive.  It included convictions for two previous robberies, in 1980 and 1992.  The 1992 robbery was also of a jewelry store, for which he served a 220-month prison sentence.  See Doc. No. 40 at 9-11.  Within months of his release from prison for the 1992 robbery, Nelson committed the present offense.  See Gov't's Objection to Def.'s Mot. for Release, Doc. No. 71 at 10.  Due to Nelson's extensive criminal history and the failure of his previous prison sentence to deter his criminal behavior, I sentenced Nelson to a term of imprisonment of 168 months on each count, to be served concurrently, with three years of supervised release to follow.  See Doc. No. 50 at 2-3.  He has served approximately 97 months of his sentence.  See Mot. for Compassionate Release, Doc. No. 69 at 3.

Nelson is currently incarcerated at Federal Correctional Institution ("FCI") Phoenix, a BOP facility located in Phoenix, Arizona.  See Doc. No. 69 at 3.  The BOP has developed and implemented a multi-point plan to address the COVID-19 pandemic. See Doc. No. 71 at 2-5.  Under the plan, the BOP has implemented quarantine and isolation protocols, restricted inmate transfers, reduced overcrowding, limited group gatherings, employed screening procedures, and suspended visitation and tours, among other measures.  See id.  When I held a hearing on Nelson's motion on October 7, 2020, there was, at most, one active case

4

of COVID-19 at FCI Phoenix. According to the BOP's website, as of October 26, there were four active cases of COVID-19 in the inmate population and zero active cases among staff at this facility.[1]

Nelson is fifty-seven years old and suffers from diabetes mellitus Type 2, hypertension, and a history of seizures. See Ex. C to Def.'s Mot. for Compassionate Release, Doc. No. 69-3 at 1-2. Citing his age and medical conditions, Nelson submitted a request for compassionate release to the BOP, which was denied on June 24, 2020. See Ex. E to Mot. for Compassionate Release, Doc. No. 69-5; Ex. F to Doc. 69-6. Nelson did not file an administrative appeal. He then filed this motion for compassionate release on August 31, 2020, requesting a reduction in his sentence to allow for his immediate release. See Doc. No. 69 at 5.

### III. DISCUSSION

Nelson argues that I should order his release because his medical ailments, including diabetes mellitus Type 2, hypertension, and history of seizures, places him at a high risk of severe illness for COVID-19, and a reduction of his sentence would not undermine Section 3553(a)'s sentencing factors. See Doc. No. 69 at 5-6. The government opposes Nelson's motion.

---

[1] *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 26, 2020).

See Doc. No. 71. Although Nelson did not appeal BOP's denial of his request for a reduction in sentence, the government agreed at the motion hearing that Nelson had exhausted his administrative remedies. Accordingly, his motion is properly before me under Section 3582(c)(1)(A).

Nelson has met his burden of demonstrating that "extraordinary and compelling reasons" exist that would render him eligible for compassionate release, as conceded by the government. See § 3582(c)(1)(A); Doc. No. 71, at 8-9. According to the Centers for Disease Control and Prevention ("CDC"), diabetes mellitus Type 2 places individuals at an increased risk for severe illness if they contract COVID-19.[2] Further, the CDC also warns that hypertension might place individuals at an increased risk for severe illness if they contract COVID-19.[3] At fifty-seven years old, Nelson is not in the highest risk category due to his age, but his age does create additional risk for severe illness.[4] On similar facts, other district courts have found that diabetes, in combination with other risk factors, including hypertension and older age,

---

[2]  *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Oct. 26, 2020).
[3] Id.
[4] *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Oct. 26, 2020).

justifies a finding of an "extraordinary and compelling reason." See United States v. Zukerman, 451 F. Supp. 3d 329, 335 (S.D.N.Y. 2020) (defendant's older age in combination with his diabetes, hypertension, and obesity, satisfy the extraordinary and compelling reason requirement); United States v. Colvin, 451 F. Supp. 3d 237, 241 (D. Conn. 2020) (defendant's diabetes places her at "higher risk for severe illness" and demonstrates an extraordinary and compelling reason justifying immediate release); United States v. Rodriguez, 451 F. Supp. 3d 392, 401-402 (E.D. Pa. 2020) (defendant's underlying medical conditions, including Type 2 diabetes mellitus and essential hypertension, demonstrate an extraordinary and compelling circumstance). See generally, United States v. Amarrah, 458 F. Supp. 3d 611, 617 (E.D. Mich. 2020) (quoting United States v. Perez, 451 F. Supp. 3d 288, 294 (S.D.N.Y. 2020) ("[M]any courts have found that, for high risk individuals, communal prison confinement conditions satisfy the definition of 'extraordinary and compelling reason for release' because they make it impossible for vulnerable individuals to 'protect [them]selves from the spread of a dangerous and highly contagious virus.'").

    I therefore accept, as the government concedes, that Nelson's medical conditions increase his relative risk of COVID-19-related complications.

Fortunately, the current risk of contracting the virus at the institution where Nelson is incarcerated is low. The BOP has a mitigation plan in place that appears largely successful in controlling the spread of the virus at FCI Phoenix, given that there are currently only four confirmed cases of active COVID-19 at the facility.[5]

I must also consider the sentencing factors under Section 3553(a). See § 3582(c)(1)(A). The factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities. See § 3553(a). These factors do not support Nelson's early release.

There is no doubt that Nelson committed serious crimes. He was involved in two separate robberies, both of which involved the theft of more than $200,000. Although he did not have or

---

[5] I acknowledge that confirmed cases are different from the number of actual cases. See Amarrah, 458 F. Supp. 3d at 618 ("Zero *confirmed* COVID-19 cases is not the same thing as zero COVID-19 cases. The Bureau of Prisons recently discovered this when it found that 70 percent of the inmates it tested were positive for the disease."). However, Nelson does not challenge this statistic and has presented no evidence that this number substantially under-reports the actual number of cases in the facility.

8

brandish a gun, his co-conspirator did and used it to injure a store clerk.  Nelson also used a hammer to smash a glass jewelry case.  These crimes occurred mere months after Nelson was released following a 220-month sentence for a robbery of yet another jewelry store in 1992.  The sentence I originally imposed reflected the serious nature of Nelson's offenses and the failure of his previous sentence to deter him from similar criminal conduct.  Reducing that sentence would not be consistent with the goals of sentencing, including promoting respect for the law, providing just punishment, deterring further criminal conduct, and protecting the public.  Accordingly, I conclude that the interests of justice would not be served if his sentence were reduced.

I recognize that Nelson has made significant efforts to rehabilitate himself during his incarceration and, for the past year and a half, has avoided citations for misconduct.  There are certainly signs that Nelson has invested in his own rehabilitation and education.  Prior to his sentencing, he received certificates of completion in nine different programs, was a lecturer for the jail's youthful offender program, and participated in drug counseling.  See Doc. No. 69 at 2.  Nelson has also completed eleven additional courses while incarcerated, disclaimed membership in a gang, and has participated in the BOP's drug awareness programs.  See id. at 2-3.  His conduct in

9

prison has been commendable, and Nelson remains free to file a renewed motion in the event of a change of circumstances, either in the risk to his health or at a time closer to the end of his sentence.  At present, however, his efforts do not alter the fact that his sentence remains no greater than necessary to achieve the purposes of the sentencing statute.  Consideration of Section 3553(a)'s factors, therefore, weighs against granting any reduction in Nelson's sentence.

## IV.  CONCLUSION

For the foregoing reasons, Nelson's motion for compassionate release (Doc. No. 69) is denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

October 26, 2020

cc:  Bruce E. Kenna, Esq.
     Charles L. Rombeau, Esq.
     U.S. Marshal
     U.S. Probation